IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOEL BRANTLEY,<br>    Plaintiff, | § § § | |
| v. | § § | CIVIL ACTION NO. 4:09-cv-02439 |
| INSPECTORATE AMERICA<br>CORPORATION, | § § § § | |
| Defendant. | § | |

### DEFENDANT'S RESPONSE IN PARTIAL OPPOSITION TO PLAINTIFF'S MOTION FOR CERTIFICATION OF COLLECTIVE ACTION

Defendant Inspectorate America Corporation ("Inspectorate") files this Response in Partial Opposition to Plaintiff's Motion for Certification of Collective Action, as follows:

### SUMMARY

Plaintiff's Motion for Certification of Collective Action is not in fact a motion for certification, but instead should be labeled a motion for "conditional certification and notice" as Plaintiff's prayer merely requests that the Court permit and supervise notice to all current and former OGC Inspectors "similarly situated" to Plaintiff as step one of the two tiered approach set forth in *Mooney v. Aramco Services Co.,* 54 F.3d 1207, 1212 (5th Cir. 1995). Due to the lenient standard for conditional certification and notice, Inspectorate does not oppose conditional certification and notice. However, as set forth in more fully below, there are several deficiencies in Plaintiff's proposed Notice to which Inspectorate objects. Inspectorate attaches hereto its proposed notice as Exhibit "A" along with a redline of Plaintiff's proposed notice as Exhibit "B".

### BRIEF FACTUAL BACKGROUND

Plaintiff, Joel Brantley ("Plaintiff"), was employed by Defendant, Inspectorate as an Oil, Gas and Chemical Inspector ("OPC Inspector") and performed related activities predominantly within Texas. Plaintiff maintains that Defendant failed to compensate him with time and one –

half of his regular rate of pay for every hour worked over forty (40) per work week. Accordingly, Plaintiff maintains that Defendant's actions violate the Fair Labor Standards Act ("FLSA"). Defendant denies Plaintiff's allegations, and asserts that Plaintiff was properly compensated for overtime pursuant to the fluctuating work week method.

### PLAINTIFF'S PROPOSED NOTICE IS DEFECTIVE IN SEVERAL RESPECTS

Plaintiff included with his Motion a proposed notice to potential opt-in plaintiffs that he asks the Court to approve. The Notice is deficient in many respects, and if the Court is inclined to conditionally certify any FLSA collective action, it should not give its imprimatur to this Notice. Notice to potential members of a collective action is intended to "provid[e] them with a neutral discussion of the nature of, and their rights in [the lawsuit]."[1] The information afforded to potential class members should "provide a fair statement of their rights."[2] Plaintiffs' proposed Notice does not accomplish this. It contains a number of defects and omissions, the most significant of which are discussed below, that prejudice Inspectorate. It fails to offer potential opt-in plaintiffs balanced information or a fair statement of their rights. The changes proposed by Inspectorate are necessary in light of established precedent and fairness considerations.

A.  **The Notice should fully explain the potential consequences of joining the action.**

Plaintiff's proposed Notice is deficient in that it fails to fully explain to potential opt-in plaintiffs the consequences of joining the action. Plaintiff's proposed Notice should inform potential opt-in plaintiffs that they will need to participate in discovery. *See Rosen v. Reckitt & Colman Inc.*, No. 91 Civ. 1675 (LMM), 1994 WL 652534, at *1-3 (S.D.N.Y. Nov. 17, 1994) (permitting collective action defendant to depose each opt-in and serve written discovery to each opt-in); *Kass v. Pratt & Whitney*, No. 89-8343-CIV-PAINE, 1991 WL 158943, at *5 (S.D. Fla.

---

[1] *Monroe v. United Air Lines, Inc.*, 90 F.R.D. 638, 640 (N.D. Ill. 1981).
[2] *Id.*

2

March 18, 1991) (authorizing defendant to propound interrogatories, document requests, and deposition notices on opt-in plaintiffs)).

The Notice should also inform potential opt-in plaintiffs that it may be necessary for them to appear for deposition and/or trial in the Southern District of Texas (see Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* §2112 (2d. ed. 2006) (general rule is plaintiff must appear for deposition in the forum selected for filing action); *see also Reab v. Elec. Arts, Inc.*, 214 F.R.D. 623, 630 (D. Colo. 2002) (approving notice advising potential plaintiffs that if they opt-in, they may be asked to appear for deposition in Denver, respond to written discovery, and appear at trial in Denver); *Whalen v. United States*, 85 Fed. Cl. 380, 389 (Fed. Cl. 2009) ("[P]laintiffs' proposed notice must additionally be amended to inform potential plaintiffs that they may be both deposed by the government and required to testify in the instant matter); *Russell v. Illinois Bell Tel. Co.*, 575 F.Supp.2d 930, 939 (N.D. Ill. 2008) (accord).

The proposed Notice should also inform potential opt-in plaintiffs that they may be responsible for sharing in the liability for payment of costs if Defendant prevails in the lawsuit. *See* Fed. R. Civ. P. 54(d); *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 91, 107 (S.D.N.Y. 2003) ("You may also be held liable for costs associated with this lawsuit, and for potential counterclaims which could be asserted against you by ... [d]efendants.")); *Adams v. Inter-Con Sec. Systems, Inc.*, 242 F.R.D. 530, 540 (N.D. Cal. 2007) ("[P]otential plaintiffs may share in liability for payment of costs if Inter-Con prevails. This information should be included to present to potential plaintiffs a 'fair statement of their rights'").

**B.     The date for filing consents to join the action should be fixed at 30 days after the date of the notice.**

Plaintiff requests that the deadline for returning opt-in notices should be sixty days from the date of notice. This period should not exceed thirty days from the date of the notice. A plethora of reported decisions addressing the issue afford opt-in plaintiffs 30 days or fewer from

3

the date of the court's order certifying the case as a collective action or from the date of the notice to return the consent forms. *See, e.g., Johnson v. Am. Airlines*, 531 F. Supp. 957, 961 (N.D. Tex. 1982) (consent forms due 21 days from "transmittal of notice"); *Held v. Nat'l R.R. Passenger Corp.*, 101 F.R.D. 420, 423 (D.D.C. 1984) (consent forms due "no later than thirty days from the entry of this order"); *King v. ITT Continental Baking Co.*, No. 84 C 3410, 1986 WL 2628 at *6 (N.D. Ill. Feb. 18, 1986) (30 days from the date of mailing); *Allen v. Marshall Field & Co.*, 93 F.R.D. 438, 449 (N.D. Ill. 1982); *Watkins v. Milliken & Co.*, 613 F. Supp. 408, 420 (W.D.N.C. 1984) (denying notice and ordering that all consent forms be filed within 30 days of the order).

**C.    A neutral, third-party administrator should be used for mailing the notice.**

Defendants request that notice to the class be mailed, and that responses be processed, by a neutral third-party administrator. It is routine to use a third-party administrator to send out class notice in order to protect the private information of the individuals receiving notice. Moreover, using a neutral administrator for this mailing is the only way to ensure that it is conducted in a way that is consistent with the Court's order, and that the class members receive notice in a format that has been agreed upon by the Parties. In addition, while the Parties disagree about the time frame to return the notice, the Parties all agree that there will be a deadline. For this reason, it is important to have a third-party administrator to verify that responses have met whatever deadline this Court imposes. Without having this function handled by a neutral third party, it will be difficult to determine whether this deadline is honored. There are many reputable third party administrators that specialize in these types of class action notice and class administration.

Courts routinely require notice be sent through a third-party administrator who will ensure that confidential, private employee information is protected. *See Russell v. Wells Fargo*

*& Co.*, No. CV 07-3993-CW, 2008 WL 4104212, *5 (N.D. Cal. Sept. 3, 2008) ("it would be more appropriate to have a third-party administrator distribute the collective action notice, as was done with the first notice that was sent to some members of the putative class"); *Lewis v. Wells Fargo & Co.*, No., No. C 08-02670 CW, 2009 WL 3517660, *4 (N.D. Cal. 2009) ("Although Plaintiffs correctly note that the Court is authorized to order the production of potential class members contact information to Plaintiff's counsel, they have not explained why it would be preferable for their counsel to oversee distribution of the notice"); *Gilbert v. Citigroup, Inc.*, No. 08-0385 SC, 2009 WL 424320, *6 (N.D. Cal. Feb. 18, 2009). If any individual chooses to opt in to the action, he or she can voluntarily disclose his or her name and address to Plaintiffs on the consent form attached to the notice. If an individual chooses not to participate in the action, his or her private information is protected from unwarranted and unauthorized disclosure.

Federal courts have held that individuals have a privacy interest in not having names and addresses disclosed without their consent, including by their employers and even to individuals seeking to represent their interests. *United States Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 501 (1994). In reversing a decision ordering the disclosure of addresses of federal civil service employees to their collective-bargaining representative, the Supreme Court recognized the sensitive nature of employee addresses:

> Many people simply do not want to be disturbed at home by work related matters. Employees can lessen the chance of such unwanted contacts by not revealing their addresses to their exclusive representative. Even if the direct union/employee communication facilitated by the disclosure of home addresses were limited to mailings, this does not lessen the interest that individuals have in preventing at least some unsolicited, unwanted mail from reaching them at their homes. We are reluctant to disparage the privacy of the home, which is accorded special consideration in our Constitution, laws, and traditions.

*United States Dep't of Defense*, 510 U.S. 487 at 501 (emphasis added).

Plaintiffs do not have a compelling need to oversee the notice procedure and obtain the names and home addresses of all putative class members where notice could be provided without

5

its unauthorized disclosure. If notice is ordered, it can be mailed by a third-party administrator. Only in returning a consent form does an individual indicate willingness to participate in the action, to potentially be represented by Plaintiffs' counsel, and, impliedly, to the disclosure of his or her private information.

**D.     Fairness requires that Defendant's counsel also be identified in the notice.**

Prior to opting in, employees are not members of any class and are not represented by Plaintiff's counsel. Such individuals have the right – and should have the opportunity – to speak with anyone they chose, including Plaintiff's counsel, Defendant's counsel, or anyone else. *See, e.g., Parks v. Eastwood Ins. Servs., Inc.*, 235 F. Supp. 2d 1082, 1085 (C.D. Cal. 2002) (finding that it was permissible for a defendant, before its employees opted in to the collective action, to suggest that employees direct questions their questions about the case to the company's counsel); *Gerlach v. Wells Fargo & Co.*, No. No. C 05-0585 CW, 2006 WL 824652, *7 (N.D. Cal. March 28, 2006) (prior to opting in, the court found "insufficient justification to prohibit Defendants from contacting potential collective action members").

Plaintiff's attempt to limit the scope of information available to recipients of the notice is unwarranted and improper. Including only Plaintiff's counsel on the contact information incorrectly suggests to the employees that they are limited in who they can contact, or suggests that they are already represented by Plaintiff's counsel. There is no authority that gives Plaintiff's counsel exclusive access to potential class members. Providing information counsel on both sides is a simple and appropriate step to help ensure that individuals have access to as much information as possible.

**E.     It is unreasonable and unnecessary to require defendant to post the notice at branch locations.**

Requiring Defendant to post the class notice at branch locations is an unnecessary and unreasonable intrusion on Defendant's property and the workplace. First, there is no basis to

6

conclude that first class mail to every putative class member is an ineffective means to provide them with the class notice. Courts generally consider first class mail to be sufficient to notify putative class members. *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992); *Barnett v. Countrywide Credit Indus.*, No. CIV.A.3:01-CV-1182-M., 2002 WL 1023161, at *2 (N.D. Tex. May 21, 2002) ("[M]ailing the notice to the potential class members, rather than also posting them at Defendant's offices, is sufficient to provide the potential opt-in plaintiffs with notice of the suit."); *Sharer v. Tandberg, Inc.*, No. No. 1:06-cv-626 (JCC), 2006 WL 2988104, *3 (E.D. Va. October 17, 2006).

Plaintiff has made no showing that first class mail will be insufficient in this case to notify the putative class members. There are approximately 500 putative class members. Of those, only approximately half are still employed by Inspectorate. If the putative class member is less than 1,000 and many of the putative opt-in plaintiffs are no longer employed by the defendant—and hence would not even be exposed to posted notice—courts have held that posting is not necessary. *Mowdy v. Beneto Bulk Transp.*, No. No. C 06-05682 MHP, 2008 WL 901546, *9 (N.D. Cal. March 31, 2008). Moreover, Inspectorate will provide the last known names and addresses of all potential opt-in Plaintiffs to the third-party administrator. Therefore there is no dispute regarding whether the list of putative members will be provided or accurate.

Moreover, posting the notice at Inspectorate's branch locations creates confusion by implying that Inspectorate is endorsing or supporting the lawsuit. Inspectorate's bulletin boards have work-related instructions and company sponsored information. Posting the notice on Inspectorate's boards may create more confusion by leading employees to believe that Inspectorate is instructing them to opt in to the lawsuit.

Finally, posting the notice at Inspectorate's branches may cause potential opt-in plaintiffs to question Defendant's managerial agents about the lawsuit. Not only will such questions

distract Defendant's managerial employees from performing their jobs, such questions could lead to claims that Defendant is misleading potential class members. In short, mailing the notice to potential class members is adequate to provide them with notice of the lawsuit.

**F.    References to the offensive term "Chinese Overtime" should be removed.**

Plaintiff's proposed Notice and Order describes Inspectorate's alleged fluctuating work week overtime policy as "Chinese Overtime." Chinese Overtime is a term with offensive racial overtones that has no legal meaning. Inspectorate does not describe its compensation structure as "Chinese Overtime" in its employment manuals or policies. Neither the FLSA nor its regulations use or sponsor the use of the phrase Chinese Overtime. Moreover, the proposed notice already describes Plaintiff's complaints regarding Inspectorate's alleged overtime compensation policy. Labeling the alleged policy with a racial slur does not add anything. The phrase Chinese Overtime does not help explain the policy in anyway and Inspectorate is at a loss as to what China and its citizens have to do the issues involved in this suit. If the Court were to allow the use of the phrase at this early stage of the litigation, it may be tempted to allow the slur to be used throughout the litigation and at trial where the phrase has the potential to prejudice the jury. The phrase Chinese Overtime should not be associated with Inspectorate and should not be condoned in these proceedings. Rather, the term "fluctuating workweek" should be used. That is the term employed by the DOL to describe this method of payment, and that is the term employed by Defendant.

## CONCLUSION AND PRAYER

For the foregoing reasons, Defendant Inspectorate prays that should the Court allow notice to be sent, it approve the form of notice attached hereto as Exhibit "A" and require the notice process be handled by a third party administrator, and grant Inspectorate all other relief to which it may be entitled.

8

          MARTIN, DISIERE , JEFFERSON & WISDOM, L.L.P.

         By: /s/ W. Jackson Wisdom
           W. Jackson Wisdom
           State Bar No. 21804025

         808 Travis Street, Suite 1800
         Houston, Texas 77002
         Telephone: (713) 632-1700
         Facsimile: (713) 222-0101

         **ATTORNEY IN CHARGE FOR DEFENDANT,**
         **INSPECTORATE AMERICA CORPORATION**

OF COUNSEL:
James M. Cleary, Jr.
State Bar No. 00783838
Federal I.D. No. 15499
Diana Pérez
State Bar No. 24041674
Federal I.D. No. 13945
Ethan D. Carlyle
State Bar No. 24031794
Federal I.D. 30741
MARTIN, DISIERE & JEFFERSON, L.L.P.
808 Travis Street, Suite 1800
Houston, Texas 77002
Tel: (713) 632-1700
Fax: (713) 222-0101

## CERTIFICATE OF SERVICE

  This is to certify that a true and correct copy of the above document has been served via the Court's CM/ECF system on this the 25th day of January, 2010 to:

Bernard R. Mazaheri
Andrew Frisch
Morgan & Morgan, P.A.
20 N Orange Ave., Floor 16
Orlando, Florida 32801
bmazaheri@forthepeople.com
afrisch@forthepeople.cm

          /s/ James M. Cleary, Jr.
          James M. Cleary, Jr.